Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7335 | **DATE** | 9/8/2000 |
| **CASE TITLE** | Hecny Trans Inc. vs. Chu | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Report and Recommendation recommending that the motion of plaintiff Hecny Transportation, Inc. for leave to file a Third Amended Complaint [58-1] be GRANTED except as to Counts VIII, IX and X of that Third Amended Complaint, and that Counts II, XIV and XV of that Third Amended Complaint be stricken with leave allowed to plaintiff to replead those Counts within 21 days, is hereby submitted to Judge Kocoras. Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. Lorentzen v. Anderson Pest Control, 64 F.3d 327, 330 (7th Cir. 1995).

(11) ■ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | SEP 11 2000 date docketed | |
| | Notified counsel by telephone. | | 65 |
| ✓ | Docketing to mail notices. | FILED FOR DOCKETING | |
| | Mail AO 450 form. | 00 SEP -8 PM 2:24 | docketing deputy initials |
| ✓ | Copy to judge/magistrate judge. | | SEP 11 2000 date mailed notice |
| TW | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

HECNY TRANSPORTATION, INC., )
    Plaintiff, )
  )
v. ) Case No. 98 C 7335
  )
GEORGE CHU, et al. ) Judge Charles P. Kocoras
    Defendants. ) Magistrate Judge Geraldine Soat Brown
  )
  )
  )

To:    The Honorable Charles P. Kocoras
       United States District Court Judge

## Report and Recommendation
## on Plaintiff's Motion for Leave to File Third Amended Complaint[1]

Geraldine Soat Brown, United States Magistrate Judge

Plaintiff Hecny Transportation, Inc. ("Hecny") is seeking leave to file a Third Amended Complaint [DKT #58], and defendants George Chu, et al ("Defendants") have filed a Memorandum in Opposition to Hecny's Motion [DKT #61] that incorporates arguments based on both Rule 15 and Rule 12 of the Federal Rules of Civil Procedure. For the reasons set out below, this Court respectfully recommends that the District Court: grant Hecny leave to file its Third Amended Complaint, except as to Counts VIII, IX and X. The Court further recommends that Counts II, XIV and XV of the Third Amended Complaint be stricken, and that Hecny be granted 21 days to replead those counts.

---

[1] The District Court has referred this case to the Magistrate Judge to conduct all proceedings and enter an order or report and recommendation on all nondispositive pretrial motions. [Dkt #28.] The referral was originally to Magistrate Judge Bobrick, but was reassigned to this Court on June 26, 2000.

1

Procedural History

This lawsuit arises out of the breakup of a joint venture in the freight forwarding business, resulting in accusations and counter-accusations by the former joint venturers. Hecny initiated this action in November 1998 with a two-count Complaint alleging that Hecny and defendant George Chu had been joint venturers in a freight forwarding business ("Hecny Chicago" or the "Venture"), and that Chu had breached his fiduciary duty to the Venture by using the Venture's facilities to operate a competing business that lured away customers and employees of the Venture. Count II of that first Complaint alleged that Chu and defendant Platinum Service IL, Inc. (one of the allegedly competing companies that Chu established) improperly conspired to use the Venture's facilities and employees to compete with the Venture. Chu answered and counterclaimed for breach of fiduciary duty and an accounting of amounts allegedly owed him as a result of Hecny's allegedly improper accounting practices. [Dkt #7.] Platinum Service IL moved under Rule 12(b)(6) to dismiss the claim of conspiracy against it. The District Court held that the allegations of Count Two adequately pleaded a claim for civil conspiracy. [Dkt #19.]

On July 7, 1999, Hecny filed a three-count Amended Complaint, adding a count against Daisy Chu (George Chu's wife) as an alleged co-conspirator. [Dkt #27.] Defendant Platinum Service IL, Inc. (referred to in the Complaints as "Platinum II") filed an answer [Dkt 34] but defendants Chu and Daisy Chu filed a motion to dismiss Counts I and III and for a more definite statement [Dkt #36]. Before the Magistrate Judge ruled on that motion, Hecny filed a five-count Second Amended Complaint [Dkt #37], to which Chu and Daisy Chu filed an answer, affirmative defenses and counterclaim. [Dkt #41.] The Second Amended Complaint filed on October 5, 1999 differed from the Amended Complaint by adding a claim for breach of a covenant not to compete,

2

and a claim against Platinum II for intentional interference with that contract.

On May 23, 2000, Magistrate Judge Bobrick entered an order providing, in part, that "[a]ny additional claims or counterclaims, whether as against the existing parties or any additional parties, shall be filed on or before June 19, 2000." [Dkt #51.] On June 19, 2000, Hecny filed a "Second Amended Complaint" [Dkt #54] consisting of 15 counts and adding new defendants Alfredo Jamilosa, Jerry D. Pearson, Platinum Logistics International, Inc. and Gordon Chen. At a status hearing on June 27, 2000, Defendants objected to this filing, and Magistrate Judge Bobrick set a schedule for Hecny to file a memorandum in support of its filing and for Defendants to file a brief in opposition. [Dkt # 57.]

On July 6, 2000, Hecny filed a memorandum in support of its motion to file a Third Amended Complaint, including as an exhibit the proposed Third Amended Complaint consisting of seventeen counts. [DKT #59.] The Defendants' filed their Memorandum in Opposition ("Defs.' Mem.," [DKT #61]) on July 21, 2000 and Hecny filed its Reply Brief in support. [DKT #62]. The proposed Third Amended Complaint is the subject of this Report and Recommendation.

## The Third Amended Complaint

The Third Amended Complaint differs from the Second Amended Complaint filed in October 1999 primarily in alleging that the proposed new individual defendants, Jamilosa, Pearson, and Chen, while they were employees of the Venture from the early to late 1990's, conspired with Chu to divert business from the Venture to Chu's other businesses and were paid by Chu to assist in that diversion. (Third Am. Compl., ¶¶21-4.) The fourth new defendant is Platinum International Logistics, Inc., referred to in the Complaint as "Platinum III," which Hecny alleges is the successor

3

in interest to Platinum II. (Third Am. Compl., ¶131.)[2]

With these additional allegations, Hecny asserts additional claims under various theories against both the current defendants and the proposed new defendants: violation of the Illinois Trade Secrets Act; conversion; fraudulent misrepresentation; and fraudulent concealment. In addition, Hecny asserts claims against the new individual defendants under the previous-pleaded theories of conspiracy, breach of fiduciary duty, and intentional interference with contractual relations.

### Legal Standard

Rule 15(a) requires that, once a responsive pleading has been filed, a party may amend its pleading only by consent of the adverse party or by leave of court, and "leave shall be freely given when justice so requires." On the other hand, leave to amend may be denied if there is "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or ] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### Defendants' Objections

Defendants object to the Third Amended Complaint, arguing first, that the Complaint is "futile," i.e., that the claims cannot survive a Rule12(b)(6) motion; and second, that the Complaint will cause Defendants undue delay and prejudice and is made in bad faith. To put the Third Amended Complaint into context, the second argument will be addressed first.

---

[2]Adding these defendants would not destroy diversity jurisdiction. Hecny alleges that all of the individual defendants are residents of Illinois or Virginia and Platinum III is an Illinois corporation with its principal place of business in Illinois, while Hecny is a California corporation. (Third Am. Compl., ¶¶1, 4-6, 9.)

4

## Hecny's Third Amended Complaint is Not Unduly Delayed or Made In Bad Faith.

> [V]irtually every amendment to a complaint results in some degree of prejudice to the defendant in that the potential for additional discovery arises as well as the possibility of a delay of the trial date. Thus, we have held that a motion for leave to amend will be denied only where such an amendment would cause "undue prejudice" to the defendant.

*Lanigan v. LaSalle Nat'l Bank*, 108 F.R.D. 660, 662 (N.D. Ill. 1985).

Hecny claims that it did not and could not know of the alleged wrongdoing that took place in the early 1990's that is the subject of the additional claims because the defendants concealed their acts. Hecny claims that it first had evidence (as opposed to suspicion) about the defendants' acts in April 2000 when another employee, Polly Yang, came forward and talked to Hecny. Yang's affidavit, attached to Hecny's Reply Brief [DKT #62], states that she was employed by Hecny Chicago from 1990 to 1994, reporting to Chu. Yang supports the allegations that Chu, Pearson, Jamilosa and Chen diverted business to another freight forwarder and that Chu had her prepare false records including invoices for a competing freight company. She also states that she did not reveal this information to Hecny until April 2000, although she personally retained copies of some of the documents after she left in 1994.

Defendants argue that Hecny should have gotten Yang's information earlier. (Defs.' Mem. at 14.) However, there is no showing that Hecny has not been diligent in proceeding with this action or did not move promptly to amend its Complaint once it became aware of Yang's information. Indeed, as Defendants state, "[t]he parties have engaged in extensive discovery." (Defs.' Mem. at 2.) In this Court's opinion, this is not a case where the plaintiff made a tactical decision to delay asserting known claims.

Defendants argue that the new factual allegations dating back to the early 1990's expand the scope of discovery, which had been set to close on September 30, 2000. (That date has been stricken pending the decision on Hecny's Third Amended Complaint.) However, the current scope of the pleadings is broad enough to cover that time period. Defendant Chu's Counterclaim [Dkt #41] currently seeks damages allegedly incurred over the duration of the Venture, which covers the time period of the new allegations. Chu's Counterclaim alleges that Hecny's accounting practices artificially depressed the reported profits of the Venture and thus Hecny did not pay Chu his full share of the profits and other amounts due him, which Chu now seeks as damages. (Defs.' Countercl., ¶27.) In effect, Chu is asking for an accounting of the venture.[3] Furthermore, as Defendants note, the current Second Amended Complaint already includes Hecny's claims of breach of contract, breach of fiduciary duty, tortious interference, and conspiracy. (Defs.' Mem. at 13-14.) Hecny's prayer for relief in the Second Amended Complaint (at 6) includes a request for a complete accounting of the joint venture.[4] Evidence about the new factual allegations could find their way into the proof at the trial of this case as part of Hecny's claim or as a defense to Chu's Counterclaim.

---

[3]Chu's initial Counterclaim filed in January 1999 had requested a "full and complete accounting of the parties [sic] dealings" from Hecny. [Dkt #7.] Chu's current Counterclaim avoids the use of the word "accounting" but effectively requests the same relief. A partner or joint venturer may not obtain a money judgment against another partner on particular items or transactions of the partnership or venture. There has to be a final settlement of all partnership accounts.

> The rationale for the general rule is that the resolution of disputes between partners on partnership matters usually entails a completed accounting in order to ascertain that the partner is not liable to his copartners in connection with other partnership debts.

*Hildebrand v. Topping*, 240 Ill. App. 3d 104, 109, 608 N.E. 2d 119, 123 (1992). Joint venturers stand in a fiduciary relationship to each other and the joint venture is governed by the legal rules applicable to partnerships. *Sharps v. Stein*, 90 Ill. App. 3d 435, 438, 413 N.E. 2d 75, 78 (1980). The general rule is certainly applicable here, where there are charges and countercharges of improper accounting practices and breach of fiduciary duty.

[4]Count XI of the Third Amended Complaint seeks an accounting from Chu, and the Defendants' Memorandum does not attack that Count. *(See* Defs.' Mem. at 5.)

6

Hecny's claims arising from those allegations are one piece of the complete accounting. Contrary to Defendants' concern, the new allegations of Hecny's Third Amended Complaint will not expand this litigation into "a very different case." (Defs.' Mem. at 13.) Furthermore, although a discovery cutoff date had been set, that cutoff date has been stricken, discovery has not closed and a trial date has not been set. In this Court's opinion, Defendants' arguments do not show undue delay or prejudice.

In support of their "bad faith" argument, Defendants point out that in his deposition Jamilosa denied any wrongdoing. However, that does not demonstrate that Hecny's allegations about him are in bad faith, particularly in light of Yang's affidavit.

The Defendants' arguments do not overcome the objective of the Federal Rules that leave to amend should be freely given so that cases can be tried on their merits.

With Minor Exceptions, the Third Amended Complaint
<u>Sufficiently States the Claims So That the Amendment is Not Futile</u>.

Defendants argue that the Third Amended Complaint is "futile" and that fifteen of its seventeen Counts are "procedurally or substantively flawed." (Defs.' Mem. at 5.) Leave to amend need not be granted if the proposed amendment is futile, if, for example, the amendment restates the same facts using different language, reasserts claims previously determined, fails to state a valid theory of liability, or cannot survive a motion to dismiss. *Garcia v. City of Chicago, Illinois*, 24 F.3d 966, 970 (7th Cir. 1994). With the exceptions noted below, the Third Amended Complaint is not futile.[5]

---

[5]The Third Amended Complaint sets out 66 paragraphs of factual allegations, and then seventeen counts that incorporate all of the preceding allegations and state the legal theory of that count. This leaves the Court to hunt through the preceding paragraphs to determine if the necessary allegations have been made.

In considering whether the various counts of the Third Amended Complaint fail to state a claim, the Court must construe the Complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded facts and allegations must be taken as true, with all reasonable inferences drawn in the plaintiff's favor. *Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir. 1994); *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). A complaint may be dismissed only if it is clear that no set of facts consistent with its allegations would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Applying this standard, the Court now turns to the challenged claims.

### Count II: Breach of Confidentiality Agreement and Violation of the Illinois Trade Secrets Act.

Defendants argue that certain counts combine multiple legal claims in violation of Rules 10(b) and 8(a). (Defs.' Mem. at 5-7.) Defendants are correct with respect to Count II. In that Count, Hecny alleges that through his position in the Venture Chu obtained the Venture's confidential information, including marketing strategies, pricing, and customer and vendor lists, and that Chu shared that confidential information with Platinum II and/or other competing freight forwarding businesses and with customers, for his own purposes and to divert business from Hecny. (Third Am. Compl., ¶¶ 71-88.) Hecny alleges that Chu thus violated the joint venture Agreement (Id., ¶¶71-72, 85) and the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.* (Id., ¶85). The allegations relating to the breach of contract and the violation of the Act are interwoven in Count II. However, those are two separate claims with different elements, different potential defenses, and different remedies. For example, relief under the Illinois Trade Secrets Act may include punitive damages and attorneys' fees (765 ILCS 1065/4 and 5), which are not generally available for breach of contract. Although

8

the same occurrence may give rise to claims under both theories, they are two separate claims and, in this Court's opinion, should be broken out into two separate counts.

Counts VI, VII, VIII, IX, and X:
Intentional Interference with Contractual Relations.

Defendants make a similar claim with respect to Count VI, entitled "Intentional Interference with Contractual Relations." The Defendants state that this Count, which is directed to Chu, and its counterparts Counts VIII, IX, and X, which are directed to Pearson, Jamilosa, Platinum II and Platinum III, combine elements of three claims: interference with contract, interference with prospective business relations, and violation of the Illinois Trade Secrets Act. Defendants also argue that those counts and Count VII against Daisy Chu fail to state a claim. (Defs.' Mem. at 9-10.)

In fact, Count VI states only one claim against Chu for interference with prospective business relations. Hecny alleges that Hecny Chicago had customers including Air Cat Roissy, Cat Evereux and other customers with which Hecny Chicago had "long standing and near-permanent customer relationships, and that Hecny Chicago had reason to expect that the revenue from these customers would increase over time." (Third Am. Compl., ¶¶16-18.) Hecny further alleges that Hecny Chicago had an ongoing business relationship with Fabry Glove Company which Hecny Chicago had reason to believe would be a long standing relationship. (Id., ¶¶23, 21.)[6] Hecny alleges that Chu instructed employees to divert business from the Venture (Id., ¶¶27-30), secured an agreement from CAT France and other venture customers to transfer their business to Platinum II (Id., ¶60), and used confidential information to gain favor with the Venture's customers in order to

---

[6]Paragraph numbers 21, 22 and 23 are duplicated.

9

divert their business from Hecny Chicago, as a result of which Hecny Chicago has lost business with an number of customers with which it once had relationships (Id., ¶¶86-87, 106). However, Hecny does not allege that the Venture had contracts of a fixed duration with any of its customers.

> Under Illinois law a plaintiff cannot bring an action for tortious interference with contractual relations based on a contract that is terminable at will. When a plaintiff mistakenly does so, Illinois courts will classify the claim as one of tortious interference with prospective economic advantage. . . In order to state a claim for tortious interference with prospective economic advantage plaintiff must allege that 1) it had a reasonable expectation of entering into a valid business relationship; 2) the defendant had knowledge of the plaintiff's expectancy; 3) the defendant's purposeful interference prevented plaintiff's legitimate expectation from ripening into a valid business relationship; and 4) the plaintiff was damaged as a result of the interference.

*3Com Corp. v. Electronic Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 937 (N.D. Ill. 2000).

Count VI alleges the necessary elements for tortious interference with prospective economic advantage. Furthermore, it is clear that Count VI does not intend to assert another claim against Chu for violation of the Trade Secrets Act; rather, it alleges that the misuse of confidential information and trade secrets was one of the methods of improper interference with Hecny Chicago's business relationships. Count VI is not fatally defective.

Counts VIII and IX, claiming that Pearson and Jamilosa tortiously interfered with Hecny's business relationships <u>after they left the Venture's employ</u>, do not allege all the necessary elements. Illinois law recognizes a competitor's right to interfere with a rival's prospective economic advantage, as long as the competitor does not use improper competitive tactics. *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App.3d 606, 65-16, 663 N.E. 2d 1, 7 (1995). As noted above, the Third Amended Complaint alleges that Chu was privy to confidential, proprietary information because of his position in the Venture, which Chu used before and after his departure to take customers from Hecny Chicago. However, the Complaint does not allege that Pearson or Jamilosa

10

were privy to such information. Their alleged wrongdoing was improper activity as employees of the Venture. (Third Am. Compl., ¶¶30-31, 60-65.) Thus, Counts VIII and IX fail to state a claim.

Count VII, against Daisy Chu, alleges that she was an employee of the competing freight forwarding companies to whom Chu diverted business from the Venture, that she knowingly assisted Chu in misrepresenting the relationship between the Venture and Platinum II and other competing companies, and thus assisted the diversion of CAT France and other Hecny Chicago customers to the competing companies. (Third Am. Compl., ¶¶111-18.) These allegations sufficiently state a claim for intentional interference with prospective economic advantage.

Count X, against Platinum II and Platinum III, is titled "Intentional Interference with Contractual Relations," but fails to address the necessary elements for such a claim. Indeed, Count X seems to be a conspiracy claim that is redundant to the conspiracy claim alleged in Count XVII.

Thus, Counts VIII, IX and X fail to state a claim, and leave to amend should be denied as to those Counts.

### Counts I, III, IV and V: Breach of Fiduciary Duty.

Defendants argue that these counts are barred by the five-year statute of limitations applicable to breach of fiduciary duty claims pursuant to §13-205 of the Illinois Limitations Act, 735 ILCS 5/13-205. (Defs.' Mem. at 8-9.) Defendants argue that because Hecny's breach of fiduciary duty claim arises from Chu's contractual relationship with Hecny, the five-year limitation period began to run from the date of the breach rather than the date of the discovery. *Id.* In fact, the Illinois Supreme Court has held that a cause of action does not accrue pursuant to §13-205 until the plaintiff knew or reasonably should have known that it was injured and the injury was wrongfully caused.

11

*Superior Bank, FSB v. Golding* 152 Ill.2d 480 (1992), 605 N.E. 2d 514, 517-18 (1992).[7] Hecny has pleaded that it did not and could not know of the earlier instances of defendants' wrongdoing until May 2000. (Third Am. Compl., ¶¶33, 147-48.) Unless the allegations of the complaint conclusively demonstrate otherwise, the date when the cause of action accrues is generally a question of fact not appropriately the subject of a motion to dismiss. *Pucci v. Litwin*, 828 F. Supp. 1285, 1298 (N.D. Ill. 1993).

In addition, contrary to Defendants' argument, Hecny has adequately pleaded fraudulent concealment of the defendants' alleged wrongdoing that took place in the early 1990's. Defendants' statement that Hecny has not alleged any facts demonstrating that Chu or the other defendants fraudulently concealed their actions is simply wrong. Defendants' Memorandum at 9 refers to Paragraphs 25, 32, and 40 of the Third Amended Complaint, but Defendants completely ignore other specific factual allegations. For example, Hecny alleges the following: that neither Chu nor Pearson ever provided Hecny with accurate books and records with respect to a dispute over business for customer Fabry Glove (Third Am. Compl., ¶23); that Chu ordered an employee to create false invoices relating to Fabry Glove and concealed this fabrication (Id., ¶¶24-25); that Chu diverted

---

[7] Neither of the cases cited by Defendants support their argument. The Court in *Rock Island Bank v. Aetna Casualty and Surety Co.*, 692 F.2d 1100, (7th Cir. 1982), stated that the Illinois Supreme Court had not adopted the discovery rule as the definition of the word "accrued" as used in the Illinois Limitation Act. Ten years later the Illinois Supreme Court did so hold in the *Superior Bank* case. *Federal Signal Corp. v. Thorn Automated Sys., Inc.*, 295 Ill. App.3d 762, 767, 693 N.E. 2d 418, 421 (1998), supports Hecny's position, not Defendants' argument. The court there stated:

> The discovery rule applies to contractual torts just as it applies to other torts. Therefore the limitations period for the tort alleged here did not begin until plaintiff knew, or reasonably should have known, of the breach of contract and its tortious inducement.

*Id.* (citations omitted). The court held that the running of the statute was not tolled after the plaintiff knew of the wrong by the continuing nature of the breach of contract. *Id.*

some of the Venture's business to a competitor U-Freight, paid the Ventures employees to assist the diversion, and never revealed but rather concealed the fact that they had received money from U-Freight for the diversion (Id., ¶¶27-32); that in 1993 Chu incorporated a competing company called GM Shipping and used it as a front for the improper channeling of money, including improperly charging as expenses of the Venture expenses that actually had been incurred by GM Shipping and using the Venture's resources for GM Shipping's benefit (Id., ¶¶ 41, 46); that from 1993-1995 Chu had the Venture make cash payments to GM Shipping and others, misrepresenting the reason as payment for the Venture's expenses, and concealing these payments by making them from the Venture's "petty cash" fund rather than from the Venture's general fund accounts (Id., ¶47).

As this discussion illustrates, Defendants' argument (Mem. at 8) that "all of the specific transactions that Hecny identifies to support its breach of fiduciary duty claim all occurred sometime between 1990- 1993" is also incorrect. *See also* Third Am. Compl., ¶¶52-55, alleging that Platinum II, incorporated in 1997, was permitted by Chu to operate its business from the Venture's facilities and to use the Venture's resources without Hecny's knowledge or consent. Since Hecny's initial Complaint already contained a claim for breach of fiduciary duty against Chu, which Chu has answered, some or all of the allegations of wrongdoing from 1993 to 1995 might also be deemed to relate back to the earlier pleading under Rule 15(c), "Relation Back of Amendments."

Furthermore, the Illinois Supreme Court has noted that, in evaluating whether fraudulent concealment has tolled the statute of limitations, the court should consider the fiduciary's obligations of honesty and disclosure.

> As a general rule, the concealment of a cause of action sufficient to toll the statute of limitations requires affirmative acts or representations designed to prevent discovery of the cause of action. Silence alone on the part of the defendant,

13

> accompanied by the failure of the plaintiff to discover the cause of action, ordinarily does not constitute fraudulent concealment. However, "(i)t is the prevailing rule that, as between persons sustaining a fiduciary or trust or other confidential relationship toward each other, the person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff (the other party), and that his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act; and that mere silence on his part as to a cause of action, the facts giving rise to which it was his duty to disclose, amounts to fraudulent concealment."

*Chicago Park Dist. v. Kenroy, Inc.*, 78 Ill.2d 555, 560, 402 N.E. 2d 181, 184 (1980) (citations omitted.) Here, Hecny has pleaded that Chu had an obligation under the joint venture agreement "to honestly report the status of Hecny Chicago's business to Hecny" and that as a joint venturer, Chu owed fiduciary duties to Hecny. (Third Am. Compl., ¶¶20, 67.)

Defendants' argument that the amendment of Count I is futile because it is barred by the statute of limitations fails. Because Defendants merely incorporate the same argument against Counts III, IV and V by way of a footnote in their Memorandum at 8, the argument also fails as to those Counts. For the same reasons, contrary to Defendants' argument (Mem. at 11), Count XVI for Fraudulent Concealment is stated with sufficient particularity.

### Counts XIII, XIV and XV: Fraudulent Misrepresentation.

Defendants argue that Hecny has not satisfied the requirements of Rule 9(b) with respect to these claims. (Defs.' Mem. at 11.) Once again, Defendants cite eight paragraphs of the 150 paragraph Third Amended Complaint, and ignore the specific factual allegations discussed above, in spite of the fact that each count of the Third Amended Complaint incorporates by reference all of the preceding paragraphs.

The Seventh Circuit's often-quoted formulation has said that Rule 9(b) requires the plaintiff

14

to plead the "who, what, when, and where of the alleged fraud." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir. 1992). The purposes of that requirement are to protect a defendant's reputation from harm; to minimize strike suits and "fishing expeditions;" and to provide notice of the claim to the adverse party. *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 776 (7th Cir. 1994). Because "fair notice" is a basic consideration of Rule 9(b), where there are multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud, bearing in mind that in some cases the information may be uniquely within the defendants' knowledge. *Id.* at 778 and n.5.

Here, Hecny pleads three counts for "fraudulent misrepresentation": Count XIII against Chu, Count XIV against Pearson, and Count XV against Jamilosa. Each incorporates all of the preceding paragraphs and concludes that the defendant's

> fraudulent misrepresentations as aforesaid, including his participation in obtaining and utilizing forged documents, false records and misrepresentations by others, constituted fraudulent misrepresentation and was a proximate cause of Hecny's damages as alleged herein.

(Third Am. Compl., ¶¶140, 142, 144.)

Reviewing the incorporated allegations, which include the specific instances described on p. 4-8, *supra*, the Third Amended Complaint adequately provides Chu with "fair notice" of the allegedly fraudulent misrepresentations with the required particularity. Chu's role in each alleged wrongdoing is sufficiently set out. However, that is not true with respect to the claims against Pearson and Jamilosa. There are specific paragraphs in which Pearson and Jamilosa are mentioned. For example, Paragraph 32 alleges that Pearson, Jamilosa and others fraudulently concealed the fact that business had been diverted from the Venture and failed to reveal their compensation for this

diversion. Paragraph 137 alleges that Pearson and Jamilosa participated in the conversion of computer equipment and software "by either" physically transferring the assets, preparing false documents or giving Hecny "misinformation" about the transfer. However, there are other allegations in which it is not clear who is alleged to have participated. For example, Paragraph 25 alleges that Pearson "and other Hecny Chicago employees" fraudulently concealed the fact that invoices had not been legitimately prepared. It is unclear whether this is intended to be one of the fraudulent misrepresentations for which Jamilosa is to be held liable. He is not mentioned in the paragraphs that allege the creation of "false invoices." Another example is a set of allegations relating to an insurance controversy about damaged ostrich eggs. (Third Am. Compl., ¶¶34-40.) Chu is alleged to have given Hecny a half-truth that concealed his and Pearson's interest in the controversy (Id., ¶39), but it is not clear whether Pearson is alleged to have made any misrepresentations or even whether he was asked about the controversy. Finally, its is unclear what is meant by the reference to "misrepresentations by others" in Counts XIV and XV as it relates to Pearson and Jamilosa who were employees, unlike Chu who is alleged to have had control over employees and books and records of Hecny Chicago. (Third Am. Compl., ¶13.)

The generalized reference in Counts XIV and XV do not fairly give Pearson and Jamilosa notice of the alleged fraudulent misrepresentations for which they are to answer. Those Counts should be stricken and Hecny should be allowed to replead Counts XIV and XV with more particularity as to each defendant's alleged misrepresentations.

<u>Count XVII: Civil Conspiracy</u>.

Again, Defendants argue that Hecny fails to state a claim for civil conspiracy, referring to

16

seven paragraphs of the 150 paragraph Complaint and ignoring the allegations that are incorporated by reference in Count XVII. (Defs.' Mem. at 11-12.) <u>Significantly, Defendants also ignore the District Court's Memorandum Opinion and Order of March 8, 1999 in this case which held that Hecny's first Complaint adequately pleaded a claim for civil conspiracy.</u> Thus, Defendants fail to explain in any way why the Third Amended Complaint should fail on this point when the Court found that the initial Complaint was adequate.

## Recommendation

For the foregoing reasons, this Court respectfully recommends that the District Court grant Hecny leave to file its Third Amended Complaint, except as to Counts VIII, IX, and X, and strike Counts II, XIV and XV of the Third Amended Complaint granting Hecny 21 days to replead those Counts.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this Court in the report and recommendation. <u>Lorentzen v. Anderson Pest Control</u>, 64 F.3d 327, 330 (7th Cir. 1995).

**ENTER:**

*/s/ Geraldine Soat Brown*
**Geraldine Soat Brown**
**United States Magistrate Judge**

**Dated: September 8, 2000**